# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

MAR 2 3 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

MILTON VERAN WILLIAMS, )
)
Plaintiff, )
)
v. ) No. CIV 07-124-RAW-SPS
)
MARTY SIRMONS, et al., )
)
Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motions to dismiss or for summary judgment. The court has before it for consideration plaintiff's amended complaint [Docket #18], the defendants' motions [Docket #52 and #56], plaintiff's response [Docket #64], and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court [Docket #53, #54, and #55], in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at Davis Correctional Facility (DCF) in Holdenville, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983 seeking monetary damages for alleged constitutional violations during his incarceration at Dick Conner Correctional Center (DCCC) in Hominy, Oklahoma, and Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma. The ten remaining defendants are OSP Warden Marty Sirmons, DOC Director Justin Jones, DCCC Unit Manager Steve Moles, OSP Medical Director Chester Mason, former OSP Correctional Officers Sergeant Battle and Sergeant Davis, OSP Case Manager Coordinator Bessy Greenway, DOC Deputy

Director Bobby Boone, DOC Deputy Director of Security and Investigation Scott Crow, and DOC Director's Designee Debbie Morton.[1,2]

Plaintiff alleges in Count 1 of his amended complaint that he was denied due process in the DOC misconduct procedures. He claims Defendants Moles, Sirmons, and Rucker "promoted" misconduct violations against him. From August 12-16, 2005, Defendants Sirmons and Moles allegedly conspired to have frivolous misconduct violations issued against him, in retaliation for plaintiff's using the DOC grievance procedures to lodge complaints about deliberate indifference toward black inmates at DCCC.

In Count 2 plaintiff claims Defendants Moles, Sirmons, and Rucker conspired to have bodily injury inflicted upon him. He asserts that on or about October 6, 2005, he was transported to OSP, a maximum security facility, when he had fewer than eight security points, no history of escape or assault, and he was serving a sentence for nonviolent offenses. The defendants allegedly forwarded instructions to OSP officials to have bodily harm inflicted upon plaintiff in retaliation.

On or about April 25, 2006, plaintiff was placed in a protective custody unit at OSP with a known "unruly" inmate named Joe Phillips, who had been diagnosed as mentally

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

[2] Defendants Marty Rucker, OSP Unit Manager, and Marion Bess, former OSP Correctional Officer Supervisor, were dismissed on August 15, 2008 [Docket #75].

unstable and had a long history of assaults against other inmates. Plaintiff filed numerous DOC Requests to Staff over a three-week period, but Defendant Rucker did not answer them. Plaintiff complained he was concerned about sharing a cell with Inmate Phillips, because Phillips was not taking his psychiatric medications, but was pretending to swallow the pills and then storing them in his locker.

On May 18, 2006, Inmate Phillips allegedly pulled a homemade knife on plaintiff without provocation, but plaintiff was able to calm him down. When plaintiff went to sleep, Phillips attempted to poison him with the stored psychiatric medications and also beat him while he was incapacitated by the drugs. Plaintiff was taken to the OSP medical department about nine hours later and placed in an observation cell for three days. He never received any medication for the numerous injuries he suffered to his lower back, hip bone, and spinal cord, even though he walked with a noticeable limp.

Plaintiff asserts in Count 3 that Defendant Mason falsified plaintiff's medical records to conceal injuries caused either by OSP officials or by other inmates. He claims the records incorrectly stated that he took an accidental overdose of medication, even though he had not been given any medication during that time period. Plaintiff contends his medical records were falsified, because plaintiff had put Rucker on notice that Inmate Phillips was displaying signs of violent behavior. Rucker took no action to protect plaintiff, allowing plaintiff to be injured by Inmate Phillips.

Plaintiff further alleges that on or about July 18, 2006, while being escorted to the OSP medical department, Defendants Bess, Battle, and Davis attacked him for no legitimate reason, while he was in handcuffs and leg shackles. They twisted and attempted to break his

wrist and ankle. Plaintiff maintains the film of the incident will corroborate his claim that he never resisted the officers or became combative, so the force was not necessary.

Plaintiff was examined by an OSP physician's assistant who falsified the medical records to state that plaintiff had no injuries, when he had noticeable bleeding from his wrists and ankles, cuts and bruises on his face, and injuries to his back. He was housed in the disciplinary unit for 35 days and refused all medical treatment, except for the day before his arbitration in another federal lawsuit.

On or about August 23, 2006, Defendant Rucker had plaintiff moved back to the unit where Inmate Phillips was housed, when Rucker knew Phillips previously had attempted to kill plaintiff. Phillips attacked plaintiff again, and Rucker waited three days to move plaintiff to different housing.

On or about September 15, 2006, plaintiff's nose was broken when his cell mate hit him. He was taken to the medical department where he received no pain medication. His nose was not reset, because the OSP medical staff member said there were no proper supplies to treat the injured nose.

The special report shows that plaintiff received five disciplinary reports at DCCC on August 12-16, 2005, for the offense of Menacing, after he threatened several staff members. He was found guilty of the offenses at hearings on August 26, 2005, and September 1, 2005, and he was punished with the revocation of earned credits and assignment to Level 1. He appealed one Menacing misconduct and was denied relief on October 25, 2005, but he failed to file proper misconduct appeals for the other four misconduct convictions. There is no evidence he filed a petition for judicial review, pursuant to Okla. Stat. tit. 57, § 564.1, or

appealed any adverse decision to the Oklahoma Court of Criminal Appeals.

The defendants have filed motions to dismiss, correctly alleging plaintiff's claims regarding the disciplinary proceedings should have been filed as a habeas corpus action, and there is no record that he has exhausted the misconduct appeal process or his state court remedies for the misconducts. When judgment for a plaintiff in a § 1983 suit "would necessarily imply the invalidity of his conviction or sentence, . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

The special report indicates there is no record that plaintiff filed a proper grievance appeal for the claims in his complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds, Jones v. Bock*, 549 U.S. 199 (2007).

5

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

According to the special report, plaintiff was placed in the segregated housing unit at DCCC because of his threats to staff. Unit Manager Moles recommended plaintiff's transfer to OSP because of his violent behavior. He submitted grievances while incarcerated at DCCC, but none raised the issues of his placement in segregated housing at DCCC. Plaintiff attempted to file two grievances to the Medical Director on September 1, 2005, and September 26, 2005, but those were returned unanswered for procedural deficiencies.

He was transferred to OSP October 6, 2005, and was seen by the medical services staff on that date. The health screening noted that plaintiff wears glasses, was being treated for a torn ligament in his knee, and was taking medications. He has not been in protective custody at OSP, but he filed three separatees against other inmates, none of which was Inmate Phillips. Defendant Rucker did not receive any Request to Staff about an alleged threat, and the case management notes dated April 25, 2006, and May 22, 2006, noted that plaintiff told the case manager he was fine. Defendant Rucker had no knowledge that plaintiff was at risk for harm, and the mental health staff did not note any signs of violent behavior exhibited by Inmate Phillips.

On July 18, 2006, plaintiff was being escorted to the exercise yard, when he became

6

upset over a cell move, and he said he would not leave the yard. Lieutenant Bess told plaintiff he could not go to the exercise yard, and Officers Battle and Davis began escorting plaintiff back to his cell. Plaintiff refused to go, became combative, and was restrained. He was taken to medical services, where he was checked and no physical injuries were found. He also was seen by medical staff on the restrictive housing unit on July 27, 2006, and August 4, 2006. There is no evidence indicating plaintiff's medical records were falsified.

The special report further shows there is no record of an attempt to murder plaintiff, no record of his claim of a broken nose on September 15, 2006, and no report of a medical report or medical treatment on that date. Plaintiff attempted to file two medical grievances at OSP that were returned unanswered for procedural problems. On March 10, 2008, plaintiff sent a letter to the DOC Director, but is also was returned unanswered with instructions to file a proper grievance. There is no evidence that plaintiff has exhausted any of the claims presented this lawsuit.

**ACCORDINGLY,** the defendants' motions to dismiss [Docket #52 and #56] are GRANTED, and this action is, in all respects, DISMISSED.

**IT IS SO ORDERED** this 23rd day of March 2009.

RONALD A. WHITE
**UNITED STATES DISTRICT JUDGE**